UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ROBIN CAMERON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 09-CV-0311-CVE-PJC |
| | ) | |
| **THE FOREST HILLS IPA, INC.,** | ) | |
| **HORACE C. LUKENS, JR., Ph.D,** | ) | |
| **AMERICAN ELECTRIC POWER** | ) | |
| **SERVICES CORPORATION, KEMPER** | ) | |
| **NATIONAL SERVICES, INC., AETNA** | ) | |
| **LIFE INSURANCE COMPANY,** | ) | |
| **CENTRAL AND SOUTHWEST SERVICES,** | ) | |
| **INC., and PUBLIC SERVICE COMPANY** | ) | |
| **OF OKLAHOMA,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Now before the Court are the following motions: Defendant American Electric Power Service Corporation, Central and South West Services, Inc. and Public Service Company of Oklahoma's Motion to Dismiss Pursuant to Rule 12(b)(6) (Dkt. # 39); plaintiff's motion to remand (Dkt. # 43); Defendant Aetna Life Insurance Company and Kemper National Service, Inc.'s Motion to Dismiss and Brief in Support (Dkt. # 59); Defendant, The Forest Hills IPA, Inc.'s, Motion to Dismiss and Brief in Support (Dkt. # 60); and Defendant, Horace C. Lukens, Ph.D.'s Motion to Dismiss (Dkt. # 64). Defendants argue that plaintiff's state law claims are completely preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101 et seq. ("ERISA"), and any claim that is not completely preempted is barred by res judicata or the statute of limitations. Plaintiff asks the Court to remand the case to state court, because she has alleged only state law claims and there is no basis for the Court to exercise jurisdiction over this case.

**I.**

Robin Cameron was employed by American Electric Power Services Corporation (AEP), formerly a wholly owned subsidiary of Central and South West Services, Inc. (CSW), until 2001.[1] In early 2001, Cameron applied for long term disability benefits (LTD) under the Central and South West Corporation Disability Income Plan (the Plan), and she states that the Plan was offered by AEP as part of her employee benefits package. Dkt. # 2-3, at 2. Cameron claimed that she was totally disabled due to a psychiatric disorder. Kemper National Services, Inc., later known as Broadspire Services, Inc., later acquired by Aetna Life Insurance Company (collectively, Kemper), the Plan administrator, reviewed Cameron's claim and approved her for LTD benefits beginning on May 1, 2001. Kemper reviewed Cameron's continued eligibility for benefits around April 2002 and, as part of the review process, referred Cameron to Horace C. Lukens, Ph.D, for an independent medical examination (IME). Dr. Lukens determined that Cameron was exaggerating her claims of anxiety and tension. However, he did not find substantial evidence that plaintiff was suffering from an agoraphobic restriction, and determined that she was not totally disabled. He also advised plaintiff to stop seeing one of her two regular psychiatrists.[2]

In January 2003, Kemper notified plaintiff that she not totally disabled as that term was defined by the Plan, and her LTD benefits would be terminated as of February 1, 2003. Cameron

---

[1]   The complaint names Public Service Company of Oklahoma (PSO) as a defendant, but includes no allegations about this defendant's conduct. PSO is a subsidiary of AEP and this appears to be PSO's only connection to the case, because plaintiff alleges that she was employed by AEP. See Dkt. # 2-3, at 2.

[2]   This background information about plaintiff's ERISA claim is based on the opinion and order in Cameron v. American Electric Power Services Corp. et al., 04-CV-498-GKF-SAJ (Cameron I), denying plaintiff's ERISA claim. Cameron I, Dkt. # 31, at 1-3.

appealed Kemper's decision to terminate her LTD benefits, and her appeal was denied. Cameron filed a lawsuit in Tulsa County District Court alleging state law claims of breach of contract and bad faith against AEP, Kemper, and other defendants. Defendants removed the case to federal court on the ground that ERISA completely preempted Cameron's state law claims. See Cameron I, Dkt. # 1, 2. She amended her complaint to allege a wrongful termination claim against AEP. The Court affirmed in part and reversed in part Kemper's decision to terminate Cameron's LTD benefits. The undersigned affirmed Kemper's decision to deny benefits based on application of an "any occupation" standard, but reversed Kemper's decision to begin applying that standard in February 2003, rather than April 2003. Id., Dkt. # 31. The case was transferred to the Honorable Gregory K. Frizzell for proceedings on Cameron's wrongful termination claim. He determined that Cameron's state law wrongful termination claim was preempted by ERISA, and other theories of recovery were foreclosed by plaintiff's failure to plead such theories in her amended complaint. Id., Dkt. # 55. Plaintiff appealed the undersigned's denial of her ERISA claim, and the decision was affirmed on appeal. Id., Dkt. # 57.

On June 13, 2008, the Oklahoma Board of Examiners of Psychologists (the Board) entered a consent order concerning Dr. Lukens' conduct during his IME of Cameron.[3] Dkt. # 15. The Board did not find that Dr. Lukens falsified his conclusions or prepared a report with the intent to deprive Cameron of LTD benefits. Instead, the Board determined that Dr. Lukens misinformed Cameron

---

[3]     Plaintiff referenced the consent order in her complaint and attached a copy of the consent order to the complaint. The Court may consider this document as part of the pleadings when reviewing defendants' motions to dismiss without converting defendants' motions into motions for summary judgment under Fed. R. Civ. P. 56. Park University Enterprises, Inc. v. American Cas. Co. of Reading, Pennsylvania, 442 F.3d 1239, 1244 (10th Cir. 2006); Utah Gospel Mission v. Salt Lake City Corp., 425 F.3d 1249, 1253 (10th Cir. 2005).

3

of the rules of patient/physician confidentiality in the setting of an IME and specifically identified two ethical violations committed by Dr. Lukens:

> Respondent admits that he recommended to the IPA that [Cameron] end a relationship with one of the other of two mental health professionals based on limited information without consulting with those professionals or reviewing their mental health records, which recommendation was not based on sufficient professional information, was not designed to guard against misuse of his influence, and was not in careful consideration of the mental health services provided by others, in violation of APA Ethical Standards 1.15; 2.01(a), (b); and 4.04.
>
> Respondent admits that by using his standard informed consent and confidentiality forms without explaining and/or clarifying his role and the limits of confidentiality with respect to the IME, by failing to clarify the nature of his role of and his relationship with all third parties, by failing to explain any limits to confidentiality, by failing to properly obtain informed consent, and by failing to adequately explain the nature or results of his services he failed to guard against misuse of his influence in violation of APA Ethical Standards 1.07; 1.15; 1.21; 2.01(a); 501(a) [sic], (b); 5.02; and 5.05(b) and ASPPB Code of Conduct Rules III.C.1; III.E.1; and III.E.3.

Dkt. # 15, at 5.

On April 23, 2009, Cameron filed this case alleging claims of: negligence and medical malpractice against Dr. Lukens and The Forest Hills IPA, Inc. (Forest Hills), Dr. Lukens' employer; fraud, deceit, and false representation against AEP, Kemper, and PSO; and civil conspiracy against all defendants. Dkt. # 2-3, at 3. She alleges that the consent order shows that Dr. Lukens' IME was a "sham and a fraud," and defendants colluded to deprive her of LTD benefits in reliance on this fraudulent IME. Id.

**II.**

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555

(2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, the United States Supreme Court recently held that Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee County Bd. Of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

### III.

Defendants have filed motions to dismiss under Rule 12(b) seeking dismissal of the complaint on three grounds: (1) plaintiff's state law claims are preempted by ERISA; (2) the doctrine of res judicata prevents plaintiff from filing a second suit challenging the denial of LTD benefits; and (3) the statute of limitations bars plaintiff's claims. Plaintiff opposes defendants' motions to dismiss and asks the Court to remand the case to state court for lack of subject matter jurisdiction.

**A.**

Defendants argue that plaintiff's claims concern the denial of her claim for LTD benefits under an ERISA plan, and ERISA completely preempts her state law claims. Plaintiff responds that she "has chosen to proceed strictly under state law theories of recovery," and the complaint does not allege any claim arising under federal law. She acknowledges that defendants' conduct occurred in connection with a claim for LTD benefits under an ERISA plan, but asserts that her claims concern a discrete fraudulent act, Dr. Lukens's IME of Cameron, and she is not litigating her entitlement to LTD benefits in this case.

ERISA provides a civil claim for enforcement of a beneficiary's rights under an employee benefits plan governed by ERISA. 29 U.S.C. § 1132(a). ERISA preempts all state laws "insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title." 29 U.S.C. § 1144. The Supreme Court has noted that ERISA's preemption provision is "conspicuous for its breadth" and has interpreted the term "relate to" broadly:

> "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." Under this "broad common-sense meaning," a state law may "relate to" a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect. Pre-emption is also not precluded simply because a state law is consistent with ERISA's substantive scheme.

Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990). The Supreme Court has clearly held that ERISA preempts common law claims, as well as claims arising state statutory schemes governing employee benefit plans. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47-48 (1987). The Tenth Circuit has noted that ERISA "preempt[s] nearly all state claims relating to causes of action against covered health insurers, even when 'the elements of the state cause of action [do] not precisely duplicate the elements of an ERISA claim." Lind v. Aetna Health, Inc., 466 F.3d 1195,

1198 (10th Cir. 2006) (quoting Aetna Health, Inc. v. Davila, 542 U.S. 200, 216 (2004)).  Even if ERISA provides fewer remedies than state law, this has no bearing on the preemption analysis because § 1144 "evidences Congress's policy choices and intent to provide only the remedies it specified."  David P. Coldesina, D.D.S. v. Estate of Simper, 407 F.3d 1126, 1139 (10th Cir. 2005).  However, these principles relate to conflict preemption under ERISA, and § 1144 does not automatically convert every state law claim preempted by ERISA into a federal claim.  Felix v. Lucent Technologies, Inc., 387 F.3d 1146, 1156 (10th Cir. 2004).

The scope of ERISA preemption is sufficiently broad that it completely preempts any state law claims falling within its civil enforcement provision.  Metropolitan Life Ins. v. Taylor, 481 U.S. 58 (1987).  Complete preemption is an exception to the well-pleaded complaint rule that permits removal of a complaint alleging state law claims if "federal preemption makes the state law claim 'necessarily federal in character . . . .'"  Turgeau v. Administrative Review Bd., 446 F.3d 1052, 1061 (10th Cir. 2006).  Thus, even if a complaint alleges state law claims, a state law claim may be converted into an ERISA claim for purposes of removal and the well-pleaded complaint rule if the claim is completely preempted by ERISA.  Felix, 387 F.3d at 1156.  The Supreme Court has stated:

> [I]f an individual brings suit complaining of a denial of coverage . . . , where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B).  In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely preempted by ERISA § 502(a)(1)(B).

Davila, 542 U.S. at 210.

Plaintiff alleges that her present claims arise out of an IME conducted as part of her claim for LTD benefits under the Plan and does not dispute that the Plan is governed by ERISA.  She

7

argues that she has chosen to allege state law claims only and defendants may not remove the case to federal court based on ERISA preemption. However, if her claims are completely preempted, "it is irrelevant what law the plaintiff cited in [her] complaint" and her claims will be deemed to arise under federal law for the purpose of removal. Turgeau, 446 F.3d at 1061. There is no doubt that plaintiff's claims against Kemper, AEP, and possibly PSO, are preempted under a conflict preemption analysis, because these entities are ERISA fiduciaries and plaintiff's claims clearly relate to the management of an ERISA plan. Conflict preemption under § 1144 is not enough to remove a case to federal court, and the Court must determine whether plaintiff's claims are completely preempted. Schmeling v. Nordam, 97 F.3d 1336, 1341 (10th Cir. 1996) (rejecting the defendant's argument than any federal preemption defense permits removal of state law claims and clarifying that removal is permissible only if the plaintiff's state law claims are completely preempted by federal law).

The Court finds that plaintiff's claims against Kemper, AEP, and PSO are completely preempted by ERISA, and her motion to remand should be denied. Plaintiff has attempted to cast her claims as based on alleged fraud by Dr. Lukens during an IME and asserts that other defendants conspired to perpetrate this fraud, but it is clear that plaintiff's claims directly concern the management of an ERISA plan and denial of her claim for LTD benefits. Although plaintiff is seeking compensatory damages for unspecified harm, the factual basis for her claims is that Dr. Lukens, while acting in conspiracy with the other defendants, conducted a fraudulent IME, and Kemper relied on the fraudulent IME to deny plaintiff's claim for LTD benefits. Fraudulent acts contributing to denial of an ERISA claim are simply part of a plaintiff's ERISA claim and, even if fraud does occur during the review process, this is simply part of the district court's analysis under

the arbitrary and capricious standard when reviewing a plan administrator's decision. See Parkman v. Prudential Ins. Co. of America, 439 F.3d 767, 771-772 (8th Cir. 2006) (common law fraud claim arising out of alleged mishandling of employee benefits claim preempted by ERISA). Thus, any legal duty owed to plaintiff by Kemper, AEP, and PSO arises solely out of the management of an ERISA plan and her claims against a person or fiduciary as defined by ERISA fall within the scope of § 1132(a).

However, every defendant cannot be treated as an ERISA fiduciary and it is not possible for plaintiff to bring an ERISA claim against each defendant. A person or entity is a fiduciary under ERISA to the extent that "he exercises any discretionary authority or discretionary control respecting management of such plan" or "has any discretionary authority or discretionary responsibility in the administration of such plan." AEP and/or PSO allegedly employed plaintiff and Kemper served as the Plan administrator, and these defendants undoubtedly qualify as ERISA fiduciaries. The fact that plaintiff could not bring an ERISA claim against Dr. Lukens or Forest Hills does not mean that her claims against them are not completely preempted, but it is possible that plaintiff may have a claim against the defendants that falls outside of ERISA. In terms of the Court's subject matter jurisdiction, the Court still has federal question jurisdiction as long as one of plaintiff's claims is completely preempted by ERISA, and it is not necessary to determine whether plaintiff's claims against Dr. Lukens and Forest Hills are completely preempted. Plaintiff's claims against Kemper, AEP and PSO are treated as ERISA claims arising under federal law and the Court has subject matter jurisdiction over the case, even if plaintiff has other state law claims against Forest Hills or Dr. Lukens.

**B.**

Defendants argue that plaintiff has already litigated an ERISA claim in Cameron I and this resulted in a judgment on the merits, and her claims in this case are barred by res judicata. Plaintiff responds that she was unaware of Dr. Lukens' alleged fraud until 2008 and could not have raised her fraud claims in her prior case.

"Under res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in the prior action." Satsky v. Paramount Communications, Inc., 7 F.3d 1464 (10th Cir. 1993) (quoting Northern Natural Gas v. Grounds, 931 F.2d 678, 681 (10th Cir. 1991)). Res judicata applies when there is "(1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." Pelt v. Utah, 539 F.3d 1271 (10th Cir. 2008) (quoting MACTEC Inc v. Gorelick, 427 F.3d 821, 831 (10th Cir. 2005)). In some cases, the Tenth Circuit has applied an additional requirement that "the plaintiff must have had a full and fair opportunity to litigate the claim in the prior suit." Plotner v. AT&T Corp., 224 F.3d 1161, 1169 (10th Cir. 2000); Nwosun v. General Mills Restaurants, Inc., 124 F.3d 1255, 1257 (10th Cir. 1997). However, this element is not always treated as a required element of res judicata and, instead, is considered an exception that may be raised by a party opposing the application of res judicata. Yapp v. Excel Corp., 186 F.3d 1222, 1227 n.4 (10th Cir. 1999). Res judicata is an affirmative defense, not a jurisdictional bar, and the defendant has the burden to establish the elements of this defense. Nwosun, 124 F.3d at 1257.

The Court has reviewed the complaints in both cases, and finds that the first and second elements of res judicata have been established. There was a prior case involving many of the same

parties, and the Court entered a final judgment on the merits. See Cameron I, Dkt. # 36 (final judgment as to plaintiff's ERISA claim); id., Dkt. # 56 (final judgment on plaintiff's state law claims). Plaintiff argues that her current claims could not have been raised in Cameron I, and the cases do not constitute the same cause of action for the third element of res judicata.[4] The Tenth Circuit has adopted the transactional approach stated in the Restatement (Second) of Judgments § 24 to determine if separate cases constitute a single cause of action:

> The transactional approach provides that a claim arising out of the same "transaction, or series of connected transactions" as a previous suit, which concluded in a valid and final judgment, will be precluded. What constitutes the same transaction or series of transactions is "to be determined pragmatically, giving weight to such consideration as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."

Yapp, 186 F.3d at 1227. A plaintiff cannot avoid claim preclusion by "[r]eframing the second action as a tort action instead of a contract action . . . ." McCarthy v. First of Georgia Ins. Inc., 713 F.2d 609, 612 (10th Cir. 1983). The scope of the issues litigated in the prior case is determined by the complaint in the first case, and a claim is not precluded in a second action "merely because it is based on facts that arose prior to the entry of judgment in the previous action." Hatch v. Boulder Town Council, 471 F.3d 1142, 1149 (10th Cir. 2006).

Plaintiff's argument is based on her assertion that her fraud claims did not arise until June 13, 2008, because she was not aware that she had fraud claims until the Board issued the consent order. However, the consent order does not provide any support for plaintiff's claims that Dr.

---

[4]   The Court has reviewed plaintiff's responses to defendants' motions to dismiss and cannot find any other arguments raised in opposition to defendants' res judicata defense. However, defendants have the burden to plead and establish this defense, and the Court must independently review the pleadings to determine if each element of res judicata is satisfied.

Lukens performed a fraudulent IME and conspired with the other defendants to deprive her of LTD benefits. The consent order explains that Dr. Lukens provided inaccurate advice about the scope of the physician/patient privilege and exceeded his authority by giving medical advice without consulting plaintiff's treating physicians, but the Board did not make any findings suggesting that Dr. Lukens committed fraud. Plaintiff's claims in this case are based on a disagreement with Dr. Lukens' recommendation that she was not totally disabled, and this issue is within the scope of plaintiff's ERISA claim in Cameron I. Plaintiff could have raised this issue in her ERISA briefing in Cameron I and nothing in the consent order provides further support for plaintiff's argument that Dr. Lukens' IME was biased or inaccurate. Whether it is treated as an element of res judicata or an exception to application of res judicata, the Court also finds that plaintiff also had a full and fair opportunity to litigate this issue in Cameron I.

The Court finds that plaintiff's claims against AEP, PSO, Kemper, and CSW are barred by res judicata. Plaintiff could have litigated her claims against these parties in Cameron I, and the final judgments entered in Cameron I bar further litigation on plaintiff's claims against these defendants. Although plaintiff does not address this issue, the Court notes that Dr. Lukens and Forest Hills were not parties in Cameron I and res judicata will bar plaintiff's claims against them only if they have privity with the parties in Cameron I. The Tenth Circuit has recognized that "no definition of privity can be 'automatically applied in all cases involving the doctrine of res judicata.'" Pelt, 539 F.3d at 1281. "Privity requires, at a minimum, a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same." Lowell Stats Min. Co., Inc. v. Philadelphia Elec. Co., 878 F.2d 1271, 1275 (10th Cir. 1989). Plaintiff's claims in both cases are based on the same facts and she could have attempted

to litigate a fraud claim against Dr. Lukens and Forest Hills in Cameron I. The issue is whether Dr. Lukens and Forests Hills are in privity with the defendants in Cameron I and, as the party raising the affirmative defense of res judicata, they have the burden to establish that privity exists. Pelt, 539 F.3d at 1283-84. It is possible that privity exists between Dr. Lukens and Forest Hills and the defendants in Cameron I, but neither Dr. Lukens nor Forest Hills have met their burden to establish privity. The Court finds that res judicata does not apply to plaintiff's claims against Dr. Lukens and Forest Hills due to a lack of evidence in the record showing that this element of res judicata is satisfied.

## C.

To the extent that any of plaintiff's claims are not preempted by ERISA and barred by res judicata, defendants also argue that plaintiff's claims are barred by the statute of limitations, because she did not file her state law claims within two years of Dr. Lukens' alleged misconduct. Plaintiff responds that she did not discover the alleged fraud until the Board entered the consent order on June 13, 2008, and the statute of limitations did not begin to run until she discovered her injury.

Under Oklahoma law, the statute of limitations for a fraud claim is two years from "discovery of the fraud." OKLA. STAT. tit. 12, § 95. "The fraud is deemed to be discovered, within the statute of limitation, when in exercise of reasonable diligence, it could have been discovered." Brown v. W.M. Acree Trust, 999 P.2d 1119, 1121 (Okla. Civ. App. 2000). Discovery is deemed to occur when a person exercising due diligence should recognize that he suffered an injury and the injury was caused by the defendant. See Smith v. Baptist Foundation of Oklahoma, 50 P.3d 1132, 1137-38 (Okla. 2002). If the information giving rise to a fraud claim is in the hands of the allegedly defrauded party and the fraud was not difficult or impossible to discover, the statute of limitations

begins to run when the defrauded party gained sufficient information to learn that the alleged fraud occurred. Gearhart Indus., Inc. v. Grayfox Operating Co., 829 P.2d 1005, 1006-07 (Okla. Civ. App. 1992). The statute of limitations for a claim based on a conspiracy to commit fraud is based on the same principles, and must be filed within two years from the time the claim accrued. Paxton v. Hyer, 87 P.2d 938, 939 (10th Cir. 1939).

There is no reasonable interpretation of the consent order that would give rise to a fraud claim, and plaintiff can not rely on the consent order to show that she did not discover her injury until June 13, 2008. The consent order states that Dr. Lukens violated ethical rules concerning the scope of the physician/patient privilege and plaintiff's right to confidentiality, but it does not suggest that Dr. Lukens conspired with third parties to deny plaintiff LTD benefits under the Plan. The consent order could give rise to a fraud claim only if the alleged fraud consisted of a misrepresentation concerning the physician/patient relationship or Dr. Lukens' duty of confidentiality, but plaintiff's claims are not based on any misrepresentation about these issues. Instead, plaintiff claims that Dr. Lukens participated in a scheme to conduct a sham IME and defraud plaintiff of LTD benefits. Thus, the proper starting point for the statute of limitations on a fraud claim against Dr. Lukens is when plaintiff received a copy of his allegedly fraudulent report stating that she was not totally disabled under the Plan, because this put her on notice of Dr. Lukens' statements and his alleged fraud during review of her claim for LTD benefits. It is not clear from the complaint when Dr. Lukens performed the IME of plaintiff, but the consent order states that the IME took place on September 11, 2002. Dkt. # 15, at 1. Plaintiff filed this case on April 23, 2009, and the statute of limitations for a claim based on fraud or conspiracy to commit fraud had expired long before her case was filed.

For the same reasons, plaintiff's negligence or medical malpractice claims against Dr. Lukens and Forest Hills are also barred by the statute of limitations. The statute of limitations for a negligence or medical malpractice claim is two years. OKLA. STAT. tit. 76, § 18 (two year statute of limitations for medical malpractice claims); OKLA. STAT. tit. 12, § 95 (two year statute of limitations for negligence claims). Construing plaintiff's complaint broadly, it is possible that she is alleging a negligence or malpractice claim based on Dr. Lukens' failure to properly advise her about the physician/patient privilege. However, the consent order does not provide any information about the IME that was not previously available to plaintiff, and the statute of limitations began to run on September 11, 2002 for these claims. Plaintiff's negligence and medical malpractice claims were not filed within the two year statute of limitations. Even assuming that she was not precisely aware that Dr. Lukens gave her inaccurate advice, she should reasonably have been aware of any injury caused by Dr. Lukens' conduct and the consent order did not put her on notice of any conduct of Dr. Lukens of which she was previously unaware.

**IT IS THEREFORE ORDERED** that Defendant American Electric Power Service Corporation, Central and South West Services, Inc. and Public Service Company of Oklahoma's Motion to Dismiss Pursuant to Rule 12(b)(6) (Dkt. # 39), Defendant Aetna Life Insurance Company and Kemper National Service, Inc.'s Motion to Dismiss and Brief in Support (Dkt. # 59), Defendant, The Forest Hills IPA, Inc.'s, Motion to Dismiss and Brief in Support (Dkt. # 60), and Defendant, Horace C. Lukens, Ph.D.'s Motion to Dismiss (Dkt. # 64) are **granted**. Plaintiff's motion to remand (Dkt. # 43) is **denied**. A separate judgment of dismissal is entered herewith.

**DATED** this 13th day of October, 2009.

*Claire V. Eagan*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

15